No. 69.—Nicholson and Wife, plaintiffs in error, *vs.* Wilborn and McWhorter, defendants in error.

[1.] To recover against the husband who has married a minor, upon a contract of his wife, *dum sola,* for necessaries, the wife must be joined in the action, and upon his death before judgment, it will not abate but survive against her.

[2.] Upon the marriage of an adult with a ward under age, the rights and powers of the guardian cease, both as respects her person and her estate, and the husband acquires the same rights, and incurs the same obligations which he acquires and incurs in case his wife is of age.

    If an infant female marry a man under age, *quere,* whether the power of her guardian over her estate ceases ?

[3.] Generally, an infant cannot appear by attorney, but must appear by a *guardian ad litem,* appointed for that purpose by the Court, and the appointment of a *guardian ad litem,* is a power incident to all Courts.

[4.] .Where suit is instituted against Baron and Feme, the wife being an infant, she must appear by guardian in all cases, where she has a separate estate, or where, on any other account, her defence may be distinct from that of her husband.

[5.] A rule or order for the admission of a guardian *ad litem*, must usually be applied for by the minor, before pleading, and a copy of the order appointing him, ought to be annexed to the plea, or recited in it. But, if the minor has appeared by attorney, upon, at any time, ascertaining that the defendant is a minor, the plaintiff may move to strike out the appearance by attorney, and for the appointment of a guardian *ad litem ;* and if the defendant fails, within a time limited by the Court, to name a guardian, the plaintiff will be at liberty to name one; and he will, thereupon, be appointed. And similar proceedings may be had where the minor has failed to appear at all.

[6.] If an infant appear by attorney, it is error in fact, and a judgment entered against him on such appearance will be revoked upon writ of error, *coram nobis*.

[7.] When in a suit against a minor for necessaries furnished, it turns out in proof, that the minor has been furnished with money sufficient to supply her with necessaries, the presumption of law is, that she has been fully supplied from that fund and the burden rests upon the plaintiff to negative that presumption ; and to the extent, and no farther, that he can show that she has not been supplied, will he be entitled to recover.

[8.] If it is made to appear that *at* or *about*, the time that the plaintiffs sold to a minor their bill of goods, she has been fully supplied by purchases from other stores, they will not be entitled to recover any thing. If the minor has been supplied from any quarter, they cannot recover. But if it appears that the minor has been supplied by purchases from other stores, made *at* or *about* the same time with the sale to her by the plaintiffs, with certain articles of necessity, not amounting to a *full* supply, the plaintiffs are entitled to recover their account, if for necessaries, to the extent that she was not supplied from the other stores.

[9.] If the credit is given to the guardian, and not to the minor, the minor is not liable, and the Jury are to judge from the evidence whether it was so given or not. And it is not necessary, in such case, that the contract with the guardian be proven expressly.

[10.] When the plaintiff sues for a bill of necessaries furnished for a given year, it is not indispensable, in order to show that the minor was not furnished for that year, that the plaintiff show *specifically* what articles were in fact furnished.

Complaint, in Stewart Superior Court. Tried before Judge IVERSON, April Term, 1853.

Mary A. Nelms, before she intermarried with Duncan L. Nicholson, contracted an account with Wilborn & McWhorter, merchants in the Town of Lumpkin, Stewart County. Af-

ter her marriage, Wilborn & McWhorter brought their action against Duncan L. Nicholson and his wife, for the amount of the account. To this action the defendants filed the plea of infancy—alleging, that at the time the account was made and at the time the suit was brought, Mrs. Nicholson was an infant.

On the trial, counsel for defendant moved to dismiss the case, because one of the defendants was an infant. The Court overruled the motion, and permitted the plaintiffs to take an order appointing a guardian *ad litem*, for Mrs. Nicholson. To which decision and ruling of the Court, counsel for defendants excepted.

The Court charged the Jury, if the guardian furnished his ward with an allowance of money, sufficient to supply herself with necessaries suitable to her age and condition in life, still, if it were not made to appear that the money was expended in purchasing such necessaries, the plaintiffs were entitled to recover, if their demand was for necessaries; and that it was incumbent on the defendants to show by proof, that the money was applied in procuring such necessaries by the minor.

That, if it were proven that the minor had supplied herself with necessaries from other stores, still, if those obtained from the plaintiffs were bought about the same time, or contemporaneously, that the plaintiffs were entitled to recover the amount of their account.

Counsel for defendant requested the Court to charge the Jury, that if they believed from the evidence that the credit was given to the guardian, and not to the ward, the plaintiffs were not entitled to recover from the ward; but the Court charged that the ward was liable and might be sued, unless it appeared that the contract was expressly made with the guardian—and defendants also requested the Court to charge, that to entitle the plaintiffs to recover, they must show to the Jury what particular articles of necessity the guardian did furnish the ward in the year 1848, and that the same were not sufficient.

Which charge, the Court refused to give, and to these charges and refusals to charge, counsel for defendants excepted.

TUCKER, for plaintiffs in error.

J. M. CLARK, for defendants in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] Upon marriage, the husband is entitled to the estate of the wife in possession, and to reduce into possession her choses in action, and thus acquire property in them also. Without adverting to any limitations to these rules of law, in Courts of Chancery, it is sufficient for this case to state them thus broadly. As a consequence, he becomes liable for the debts of the wife contracted *dum sola.* It is necessary for the creditor to join the wife with the husband in a suit for their collection. Judgment being obtained against both, if the husband dies, his estate is bound. But if she dies before judgment, his liability ceases ; so, if he dies before judgment his estate is not chargeable. To these last propositions also, there are exceptions in certain contingencies in Chancery, to which it is not now important to refer. The joinder of the wife is necessary, because, upon the death of the husband before judgment, the action does not abate, but survives against her. She being a party, must be served, and being of age, may appear by attorney. Now, this suit was brought to charge the husband with a debt of his wife, contracted before marriage, and whilst she was an infant, for necessaries. An infant is liable for necessaries—that is the rule. And the husband is liable, if, by the law regulating the matter, she was liable as an infant. He is entitled clearly to the defences which his wife would be entitled to make, if *sole.* That is to say, he may plead her infancy when the debt was contracted, and that the claim was not for necessaries suitable to her condition and degree—that she was furnished by her guardian, &c. &c.

Farther, in this case, the wife was a minor when the suit was instituted.

[2.] Does that fact vary his rights and obligations ? If he is an adult, it does not. The wardship ceases upon the marriage of a female infant with an adult husband. The marriage is valid, and the marital rights follow. The rights of the guardian cease, both as it respects her person and estate. Her husband has a right to her person and to her estate. If an infant female marry an infant, it seems that the guardianship of her person ceases, and the better opinion, says Judge *Reese* is, " that her estate is, by marriage, transferred to the minor, for his marriage is as effectual as the marriage of an adult, and all the same consequences follow." If a male infant marry, the opinion seems to be, that the guardianship of his person ceases, but as to his estate, the guardianship continues. And if he marry an infant, as her property has become his, his guardian's power extends to that also. *Ours* is the case of a female infant marrying an *adult* husband. In such a case, it is settled that her wardship ceases, and the husband acquires the same rights, and incurs the same liabilities, as he would acquire and incur, were she not an infant. *Reese's Domestic Relations*, 338. *Kettletas vs. Gardner*, 1 *Paige R*. 488. 4 *Johns. Chancery R*. 378. 1 *Vesey*, 160. 3 *Atk*. 625. 1 *Tucker's Com. top page*, 138.

What I wish to deduce from these propositions is, that the husband, in this case, is liable for the contracts of his wife, *dum sola*, just to the same extent that he would be, if she were not an infant. It was necessary to make her a party, as in other like cases, because the action, upon the death of the husband before final judgment, would survive against her. The fact that she is an infant does not make the joinder improper, because, as an infant without coverture, she would be liable to a suit ; and if still an infant at the death of her husband, should that occur, this action would survive against her, it being for necessaries. It is among the privileges of infancy, that an infant may make a valid contract for necessaries, and if she can contract, she can be sued on that contract, either sing-

ly or jointly with her husband, after marriage.   So, there was no error in the refusal of the Court to dismiss the suit, because one of the defendants was an infant.

[3.]  A farther exception was, to the order of the Court appointing, at the instance of the plaintiffs below, a guardian *ad litem,* for the wife.   This exception goes upon the ground that the appointment was not within time.   The defendant in error responding, says, that the appointment was in time, and if not, there was no error committed which can affect the rights of either party ; because, in a case like this, it is not necessary that the infant wife should appear by guardian.   It is certainly true, as a general rule, that an infant cannot appear by attorney, but must appear and defend by guardian appointed by the Court for that purpose.   1 *Tidd's Practice,* 98, 99.   2 *Strange,* 784.   2 *Saund. R.* 112, 113, *notes.   Ib.* 117, *n.*   11 *Johns. R.* 460.   13 *Wend.* 577.   *Chitty on Contracts,* 857.   2 *Johns. R.* 192.   1 *Chitty's Pleadings,* 412.

The question is, does this rule apply to cases like the present, where the infant is under coverture, and is sued jointly with her husband ?   It would seem that, since the husband, by the obligation of the marriage, is bound to pay her debt, if for necessaries, and has all the rights of defence which she could set up if *sole,* there can be no necessity for her separate defence.   It is not perceivable what interest she can have requiring a defence separate from her husband.

As he is bound to pay out of his own estate, if the claim be a valid one against her, and if reduced to judgment during coverture, it would be an unnatural presumption that he would collude with the plaintiff, or negligently fail to make all legal defences.   Her desire ought to be, if the claim be just, that it be paid ; and such a desire is not made unavailing by not herself entering pleas—on the contrary, non-appearance is in accord with it.   She being *sub protestate viris,* it would seem, too, to be competent for him to appoint an attorney for her, and that the case would regularly proceed without more against them both.

[4.] And yet it is laid down, that when an infant *feme covert* is sued jointly with her husband, she must appear by guardian. 1 *Tidd's Practice,* 99. 1 *Dane. Abr.* 602. *Reese's Dom. Rel.* 266, 267. *Bacon's Abr.* letter *K.* title *Infancy and Age,* page 150, *vol.* 3. *Roll's Abr.* 288, *S. C. Cro. Eli.* 379, *S. C.* This rule doubtless applies to cases where the wife has a separate estate, or on some other account, has an interest distinct from that of her husband. Be this as it may, we believe that the appointment was not too late, and that the Court did not err in making it. The power to appoint a guardian *ad litem,* is incident to all Courts. *Coke's Litt.* 88, *b. Hargraves' Notes, ad finem.* 2 *J. R.* 192. The time and manner of doing it, is a matter of practice, which varies in different Courts. It seems, from this record, that the cause was for trial on the appeal, when the motion was made to appoint the guardian *ad litem.*

[5.] Both the defendants had appeared by attorney at the first term, and filed the plea of the wife's infancy. Upon the cause being called for trial, the defendants moved to dismiss, because one of the defendants was an infant. The fact of her being an infant, was *then* admitted by both parties. Contemporary with the motion by the defendants to dismiss, was the plaintiffs' motion to appoint a guardian. Regularly, the rule or order for the admission of a guardian should be applied for by the minor, and granted before plea, and a copy of it annexed to, or recited in, the plea. But if the minor has appeared and pleaded by attorney, the plaintiff may obtain an order for striking out the appearance and that the defendant appear by guardian within a limited time, which, in the British Courts, appears to be from four to six days.

[6.] Such right is indispensable to him; for if he proceeds to judgment against an infant upon appearance by attorney, it will be error in fact and subject to revocation upon writ of error, *coram nobis.* 1 *Reese's Dom. Relat.* 267. *Cro. Jac.* 640. *Yelv.* 58. *Carth.* 367. 11 *Johns. R.* 450. 13 *Wend.* 377.

If, within the time limited, the infant does not appear and

name his guardian, the plaintiff will be at liberty to name one for him. *Tidd's Practice*, 99. *Barnes*, 414, 418. 7 *Taunt.* 488. 1 *Moore*, 250, *S. C.* 2 *Chitty's R.* 22, (*a.*) 3 *Bing.* 609. And a similar order may be obtained by the plaintiff, when the defendant neglects to appear at all. *Tidd's Practice*, 99. 2 *Strange*, 1076. 2 *Wils.* 50. Now, this is a case where the defendant had appeared by attorney, and although not in form, yet in substance, the plaintiffs' motion was, to strike out that appearance, and that defendant plead by a guardian then to be appointed. He was in time for such a motion; for it does not appear that before the trial term, he knew that the female defendant was an infant; *then* it seems, by the record, it was that that fact was admitted. The plea, it is true, of infancy, had been filed, but that was open to contestation. If there be a doubt about the diligence of the plaintiffs, it could arise upon a question of costs only, and cannot affect their right to have the guardian appointed. Very like this, is the case of *Shipman vs. Stevens*, 2 *Wils.* 50.

The order appointing the guardian *ad litem*, should be full enough to correct the record, and the defendant should plead *de novo* by her guardian. I do not doubt but that, in our Courts, it is competent to appoint a guardian *ad litem*, whenever, by our rules of practice, it is competent for the defendant to plead or amend his pleas, upon his application, or upon the application of the plaintiff at any time, upon ascertainment of the fact that the defendant is an infant. In all such cases, the discretion of the Court should be much relied upon, by an appellate tribunal, and such discretion should be given to the cause by the presiding Judge, as will best promote the ends of justice.

[7.] The exceptions taken on the instructions given and declined, I think, are controlled by the decisions of this Court, in *Nicholson and wife vs. Spencer*. In that case, the principles upon which recoveries are had against an infant for necessaries, are very fully and clearly set forth by Judge *Warner*. So clearly and fully, that I have need of no reference to any other authority. Judge *Iverson* instructed the Jury, " that if

the guardian furnished his ward with an allowance of money, sufficient to supply herself with necessaries suitable to her age and condition in life, still if it were not made to appear that the money was expended in purchasing such necessaries, the plaintiffs were entitled to recover, if their demand was for necessaries; and that it was incumbent on the defendants to show by proof that the money was applied in purchasing such necessaries for the minor." That is to say, when the plaintiffs have proven that their claim is for articles of necessity suited to the age and condition of the minor, although it be also proven that her guardian furnished her with *money* sufficient for a supply of all necessaries, they have made out their case, and must recover, *unless* the defendants show by proof, that the money so furnished was applied in procuring for her the necessary supplies.

The question is, upon whom, in such a case, does the burden of proof lie? A trader must prove in all cases, not only that the articles furnished are suited to the age and condition of the minor, but, that the minor was not, in fact, supplied from any other quarter. If the minor is supplied from any other quarter—no matter how, or by whom supplied—his supplies are not necessaries, and he cannot recover. He furnishes her, with the burden upon him of proving that the articles furnished are *necessary*, and are suited to her age and condition. This being the rule, when it turns out in proof that the minor has been furnished with money sufficient to supply her with necessaries, the presumption in law is, that she has been from that fund fully supplied, and the burden rests upon him to negative that presumption, and to the extent, and no farther, that he can show that she has not been supplied, will he be entitled to recover. We think that His Honor erred in charging that, in such case, the plaintiff must recover, unless the *defendants* could show that the money was applied in procuring the necessary supplies for the minor.

[8.] He farther instructed the Jury, "that if it were proven that the minor had supplied herself with necessaries from *other stores*, still, if those obtained from the plaintiffs were

bought about the same time, or contemporaneously, that the plaintiffs were entitled to recover the amount of their account." It is not perfectly clear what rule the Court intended to lay down to the Jury in this instruction. If it is made to appear that the minor has, about the same time that the plaintiffs sold to her their bill of goods, been *fully* supplied with necessaries by purchases from other stores, the plaintiffs are not entitled to recover anything. As before stated, if the minor had been supplied from any quarter, the plaintiff's supplies are not necessaries. And if the Court intended to say, that if she was *fully* supplied by purchases from other stores, the plaintiff could recover his bill, we think he was wrong. But if (as we conclude is the true reading of the charge) the Court intended to say, if it appears that the minor has been supplied by purchases from other stores with *certain* articles of *necessity*, the plaintiffs are entitled to recover their account for necessaries sold to her at or about the same time, to the extent that she was not supplied from the other stores, why then, the Court was right. The purchases from other stores, if a full supply, will prevent the plaintiff's from the recovery of anything. To the extent that they can show that these purchases do not amount to a full supply, and to no greater extent, can they recover. And if it is reduced to a contest between creditors, as to who was first in point of time in making the supply of necessaries for a minor, we hold him entitled to recover, who proves that he *first* sold the supplies to him. How the conflicting rights of creditors are to be settled—by what procedure, or in what forum—we presume not to suggest. We are now laying down a rule between a *creditor* and the *minor*.

Selling *at* or *about* the same time, cannot enable two or more to recover, albeit all may sell such articles as are suited to the age and condition of the minor. If that were the rule, it might be that a minor would be chargeable with necessaries to the full amount, over and over again. We have nothing to do with the obligation of the husband to pay his wife's debts, in a Court of Honor. Even there, there might be sustainable limits to the obligation. Although the suit is, in this case, against the

husband as well as his wife, yet, the questions are the same, and settled by the same rules, as if she were *sole* and sued for necessaries. These strict rules are necessary to the protection of infants. Their creditors have no right to complain, for they are volunteers. In the language of *Baron Alderson*, in *Burkheart vs. Anderstein*, " a tradesman who deals with a minor, must look to himself, and take care of himself." 6 *Carrington & Payne*, 690. 11 *Ga. R.* 609.

[9.] The request to charge, that if the credit was given to the guardian and not to the ward, the plaintiffs must look to the guardian and not to the ward, we consider to have been given substantially by the Court. The presiding Judge recognized the principle, for he charged the Jury, that if the contract was expressly made with the guardian, the plaintiffs could not recover of the ward. We, however, think, that it is not indispensable that the contract with the guardian should be *expressly* proven. If it is clear to the Jury, from the evidence, that the credit was given to the guardian, they ought to find against the plaintiffs; for if that be true, the ward is not liable.

[10.] The last request was, that the Court should charge the Jury, that to entitle the plaintiffs to recover, they must show to the Jury what particular articles of necessity the guardian did furnish the ward in the year 1848, and that the same were not sufficient. *Their* burden was to show, that their supplies were needed by the minor during that year; but we cannot say that they were limited to show that fact by proving *specifically* what *articles* were furnished by the guardian. To the extent that she was not furnished from any quarter with necessaries suited to her state and condition, their claim, if for necessaries suited to her state and condition, is good ; any proof going to show that extent is allowable. The Court did not err in declining to give this instruction.

Let the judgment be reversed.